CHASTAIN v GENERAL MOTORS CORPORATION (ON REMAND)

Docket No. 222502. Submitted November 19, 2002, at Detroit. Decided
    December 27, 2002, at 9:20 A.M. Leave to appeal sought.

Emmett Chastain brought an action in the Macomb Circuit Court
    against General Motors Corporation and Allied-Signal, Inc., alleging
    that a seat belt designed and manufactured by Allied-Signal and
    installed in a truck manufactured by General Motors and used by
    the plaintiff was defective and caused the plaintiff to sustain in an
    accident injuries that rendered him a paraplegic. Allied-Signal set-
    tled with the plaintiff. The court, George E. Montgomery, J.,
    entered judgment on a jury verdict in favor of General Motors. The
    Court of Appeals, WILDER, P.J., and HOOD and COLLINS, JJ., affirmed
    in an unpublished opinion per curiam, issued November 30, 2001
    (Docket No. 222502). The Supreme Court, in lieu of granting leave
    to appeal, vacated the judgment of the Court of Appeals and
    remanded for reconsideration and clarification. The Supreme Court
    directed the Court of Appeals to clarify whether the Court of
    Appeals found error in the trial court's ruling to admit the lay opin-
    ion testimony of a police officer who investigated the accident that
    the plaintiff was not wearing the seat belt at the time of the acci-
    dent and, if so, to determine whether declining to grant a new trial,
    set aside the verdict, or vacate, modify, or otherwise disturb the
    judgment appears to the Court of Appeals inconsistent with sub-
    stantial justice. 467 Mich 888 (2002).

    On remand, the Court of Appeals held:

    1. The trial court did not abuse its discretion in admitting the
    police officer's lay opinion testimony. MRE 701 provides that if a
    witness is not testifying as an expert, the witness' testimony in the
    form of opinions or inferences is limited to those opinions or infer-
    ences that are rationally based on the perception of the witness
    and helpful to a clear understanding of the witness' testimony or
    the determination of a fact in issue. Contrary to the plaintiff's con-
    tention, the officer's opinion was rationally based on his percep-
    tion. The officer testified that he based his conclusion on the physi-
    cal evidence at the accident scene, including his observations that
    the plaintiff had been ejected from the vehicle and that the seat
    belt was in the retracted position and appeared to be in working

order. The trial court erred harmlessly in admitting those portions of the officer's testimony in which he testified about past investigative experiences and how they related to his investigation of the accident in this case.

2. The trial court did not abuse its discretion in refusing the plaintiff's request for a special jury instruction that an automobile manufacturer is liable for negligence in the manufacture or inspection of parts of an automobile directly related to its safe operation, even if the defective part was supplied by others. The plaintiff requested the special instruction in the event that the trial court read to the jury the second paragraph of SJI2d 15.05. The trial court did not read that paragraph to the jury. The plaintiff also did not object to the instructions that the trial court read to the jury. Those instructions fairly conveyed the applicable law and the theories of the parties.

3. The trial court did not abuse its discretion in denying the plaintiff's discovery request that the defendant be compelled to produce documents relating to tests, civil claims, consumer complaints, and incident reports. The requested documents pertained to vehicles manufactured several years after the manufacture of the vehicle in which the plaintiff had his accident, and the plaintiff did not indicate how they would be relevant to this case. The request was also made more than eight years after the accident, almost five years after the complaint was filed, and more than three years after discovery was closed.

Affirmed.

WITNESSES — LAY OPINION — POLICE OFFICERS — SEAT BELT USE.

A police officer investigating a motor vehicle accident may offer at a trial lay opinion testimony that a motorist was not wearing a seat belt at the time of the accident where such opinion is rationally based on the officer's observations of the physical evidence at the accident scene, including observations that the motorist was ejected from the vehicle and that the seat belt was in the retracted position and appeared to be in working order (MRE 701).

*Granzotto & Nicita, P.C.* (by *Mark Granzotto*), and *Goodman, Lister & Peters, P.C.* (by *Darrel Peters*), for the plaintiff.

*Bowman and Brooke LLP* (by *Frank Nizio, Thomas P. Branigan, Terrence E. Haggerty,* and *Kandace J. Jones*) for the defendant.

ON REMAND

Before: WILDER, P.J., and HOOD and SAWYER, JJ.

WILDER, P.J. This case is before this Court on remand from our Supreme Court, which vacated this Court's judgment and directed reconsideration and clarification of a specific portion of our prior opinion[1] in lieu of granting leave to appeal. 467 Mich 888 (2002). On reconsideration, we affirm.

## I. FACTS AND PROCEEDINGS

### A. THE ACCIDENT

On March 25, 1991, plaintiff Emmett Chastain, an employee of Cashman Equipment Company (Cashman), located in Elko, Nevada, was given two boxes of parts to deliver to another Cashman employee. That employee worked out of Cashman's Round Mountain Gold Mine Office. As was standard with such deliveries, plaintiff was to meet the Round Mountain employee in Eureka, Nevada,[2] at which time the boxes would be given to the Round Mountain employee. In order to reach Eureka, plaintiff was provided with a company-owned 1988 Chevrolet C/K pickup truck, one of several trucks used for deliveries.

Plaintiff testified that, before beginning the trip, he gave the truck a cursory look to "make sure [the]

---

[1] *Chastain v Gen Motors Corp*, unpublished opinion per curiam of the Court of Appeals, issued November 30, 2001 (Docket No. 222502).

[2] It appears that Eureka was the halfway point between Elko and Round Mountain. In any event, it is undisputed that this was the city in which Elko and Round Mountain Cashman employees would meet to exchange parts being delivered to the other location.

tires were inflated," that the gauges looked good, and that "everything" looked all right with the truck. Plaintiff also testified that he went to a gasoline station in order to "fill up" the truck, put his seat belt on, and began the trip. In order to reach Eureka, plaintiff began driving south on State Highway 278 at a speed of sixty miles an hour. At the time plaintiff began the trip, the weather was clear and dry. However, sometime during the trip it began to snow, causing plaintiff to slow to a speed of approximately fifty miles an hour. Shortly thereafter, plaintiff lost control of the truck. According to plaintiff, the truck began to slide toward the opposite lane of traffic, then began traveling backwards, eventually going off the road, where it hit a roadway marker and a shallow embankment, rolled over, and began hitting things in a "very violent" manner. The plaintiff also testified that he was ejected from the truck through the driver's side window, landing on the ground on his back. Plaintiff found himself unable to move his legs and seek assistance. He remained on the side of the highway until he was discovered by Jerry Sestanovich, a local rancher.

After being on the scene for about ten minutes, Sestanovich was able to stop a passing truck and ask the driver to call for help. Approximately ten minutes later, officers from the Lander County Sheriff's Department and the Eureka County Sheriff's Department, as well as emergency medical personnel, arrived at the scene. It is undisputed that upon their arrival, plaintiff, either voluntarily or in response to questions asked of him, informed them that he had been wearing his seat belt and therefore was con-

fused and concerned about how he ended up outside the truck.

Plaintiff was treated at the scene by, among others, Dr. Rod Phillips. Dr. Phillips noticed that while plaintiff appeared to be conscious and alert, he was complaining of pain in his neck and abdomen and that his legs were cold and numb. Dr. Phillips also noticed that plaintiff was ashen in color, had trouble breathing, spat blood, and had a large contusion on his back between his T-10 and T-12 vertebrae. On the basis of these symptoms and complaints, Dr. Phillips believed that plaintiff probably suffered a spinal cord injury. Accordingly, after plaintiff was stabilized, his neck and back were immobilized and he was transported by ambulance to the Eureka Airport, where he was then taken by plane to the Washoe Medical Center. At the Washoe Medical Center, Dr. Phillips' initial assessment was proved to be correct—plaintiff had fractured his spine between the T-11 and T-12 vertebrae. Plaintiff then underwent a surgical procedure known as a bilateral fusion in which Harrington Rods were inserted in order to stabilize his spine. Despite these medical efforts, plaintiff was rendered a paraplegic, being unable to use his legs or feel any sensation below his waist. In addition to the loss of use of his legs, plaintiff, who was twenty-three years old at the time of the accident, was left sexually dysfunctional. He also has a neurogenic bladder,[3] cardiovascular

---

[3] A "neurogenic bladder" is defined as: "A urinary bladder functioning improperly or with difficulty because of a lesion (injury or disorder) somewhere in the nervous system. Similarly, a "cord bladder" is defined

problems, and decubitus ulcers. As a result, plaintiff requires attendant care to assist him with his daily routine.

## C. ACCIDENT INVESTIGATION

The official accident investigation was conducted by Officer John Schweble of the Nevada Highway Patrol, who arrived at the scene approximately 2½ hours following the accident. At that point, plaintiff had been taken to the hospital and no one was present at the scene.[4] Officer Schweble examined the accident scene and truck, took photographs and measurements, and drew a diagram. After returning to Eureka, he also conducted interviews with people who came to the aid of plaintiff immediately after the accident.

In examining the truck, Officer Schweble determined that the lack of tread on the rear tires approached illegal levels. Officer Schweble also noted, on the basis of the witness statement of Sestanovich, that plaintiff was driving approximately fifty miles an hour and that the road conditions were snowy and icy at the time of the accident.[5] Therefore, Officer Schweble concluded, on the basis of the con-

---

as: "A urinary bladder functioning improperly because of a lesion (injury or disorder) in the spinal cord which affects the nerve mechanism controlling the bladder." *Attorneys' Dictionary of Medicine & Word Finder* (2000), p B-128.

In addition to the cord or neurogenic bladder, plaintiff lost control of his bowel functions as well. As a result, in order to have a bowel movement, plaintiff must insert a suppository and then digitally stimulate his rectum.

[4] This is true even though officers from the Lander and Eureka County Sheriff's Departments were at the scene while plaintiff was still present.

[5] That the road was snowy and icy was also corroborated by the witness statement and testimony of William Hicks, who was the state high-

ditions of both the weather and the tires, that plaintiff was driving at an unsafe speed, causing the truck to hydroplane and the plaintiff to lose control. He also concluded, and was permitted to testify at trial, that plaintiff was not wearing his seat belt at the time of the accident. Officer Schweble reached this conclusion even though he never interviewed plaintiff, never touched, examined, or tested the seat belt, and had been informed by Officer Mark Salopek, of the Eureka County Sheriff's Department, that plaintiff told him and others at the scene that he was wearing the seat belt at the time of the accident.

### D. THE COMPLAINT, DISCOVERY REQUESTS, AND TRIAL

In September 1993, plaintiff filed the instant complaint against defendant and Allied-Signal, Inc.[6] Specifically, plaintiff's complaint alleged that the seat belt, known as a Joint Development Company (JDC) buckle, was defective and that because of this defect, the buckle, instead of restraining him, released either before or after the accident, causing him to be ejected from the truck. Plaintiff contended that the buckle released either because it was "false latched"[7]

---

way employee responsible for plowing the road at the time of plaintiff's accident.

[6] Plaintiff and Allied-Signal reached a settlement before trial; accordingly, Allied-Signal is not a party to this appeal. The claim was brought against both defendant and Allied-Signal because the seat belt in question had been designed, tested, and manufactured by Allied-Signal on behalf of defendant.

[7] "False latch" means that a seat belt buckle appears to be properly latched; however, for various reasons, the seat belt is not properly latched and therefore releases when force is applied.

or because it was subject to inertial release.[8]

Before trial, on March 30, 1998, more than three years after the end of discovery, plaintiff filed a motion to compel discovery. That motion requested production of the following materials: (1) crash and sled tests conducted by General Motors in which the JDC buckle was found unlatched at the conclusion of the tests; (2) General Motors test incident reports (TIRS) that noted an unlatching problem with the JDC buckle, especially TIRS for post-1993 C/K vehicles; (3) over 150 consumer reports of problems related to the JDC buckle; (4) documents pertaining to preliminary evaluations, engineering analyses, and the recall of some C/K trucks, including documents relating to the discovery of the conditions leading to the recall; and (5) GM's "lawsuit list."

Plaintiff's motion was heard on April 13, 1998. However, in lieu of deciding the issue, the trial court assigned the case to another judge in the hopes that it could be settled. After settlement proved to be impossible, the motion was again heard by the trial court. Because the trial court believed that the requested information was irrelevant, the request was denied.[9] Thus, the case was scheduled for trial.

At trial, plaintiff called, among numerous witnesses, an engineering expert who testified that the seat belt was defectively manufactured and that, as a result of this defect, the seat belt was more likely to release

---

[8] "Inertial release" means that because of the force and acceleration of a crash, parts within the seat belt are moved, causing it to release from the lock.

[9] Specifically, the court stated that it did not "think there was relevance because I don't think it would come in under 407 [subsequent remedial measures], and I'm going to deny your request."

because of either "false latch" or inertial release. Specifically, plaintiff's expert, Stephen R. Syson, testified that a particular part of the seat belt latch, known as the banana slot or "L" shaped space is to have a maximum radius of two-tenths of a millimeter and that the banana slot of the seat belt on the driver's side of plaintiff's truck, however, had a radius of approximately one millimeter. Therefore, according to plaintiff's expert, because the radius of the banana slot was about five times larger than it should have been, the seat belt had a higher probability of being false latched or coming unlatched because of inertial release.

Syson also testified that he was able to false latch the seat belts in the truck driven by plaintiff about one out of three times he attempted to do so.[10] Syson went on to testify that according to Federal Motor Vehicle Safety Standard 209, if a seat belt is false latched it is supposed to unlatch whenever the force upon it is five pounds or less; however, the seat belts in plaintiff's truck were, according to Syson's tests and testimony, able to withstand anywhere from six to over fifty pounds of force before the tongue would separate from the buckle. Syson indicated during his testimony that this was unsafe because it meant that a falsely latched seat belt could remain buckled until the time someone is involved in an accident, only then to release during the accident, causing injury to the occupant.

In contrast to plaintiff's theory, defendant sought to rebut plaintiff's contention that plaintiff's seat belt

---

[10] Syson testified that it is possible to attempt to achieve a false latch by holding down the seat belt release button while inserting the seat belt latch into the buckle.

was defective or that it could have come unlatched during an accident. Defendant called expert witnesses to testify that the seat belt was not defective and that, even if it was defective, plaintiff's seat belt would not have come unlatched during this accident. Thus, defendant's main defense was that plaintiff was not wearing his seat belt at the time of the accident. In an effort to prove this, defendant not only called Officer Schweble to testify that, in his opinion, plaintiff was not wearing his seat belt, but also called witnesses to testify that if plaintiff had been wearing his seat belt at the time of the accident, plaintiff would have suffered injuries to the left side of his arm, his left armpit, and the left side of his neck. In addition, defendant relied on the testimony of plaintiff's own witnesses to prove the supposition that there would have been noticeable marks on plaintiff's body if he had, in fact, been wearing the seat belt at the time of the accident.

On March, 15, 1999, the jury returned a verdict, voting five to one in favor of defendant. Plaintiff now appeals.

## II. ANALYSIS

### A. OFFICER SCHWEBLE'S TESTIMONY

In its order of remand, the Supreme Court instructed us to reconsider and clarify the portion of our prior opinion addressing the trial court's decision to admit Officer John Schweble's lay opinion testimony, in which he opined that plaintiff was not wearing his seat belt at the time of his injury. Specifically, the Supreme Court stated:

The Court of Appeals is directed to clarify whether or not it found error in the trial court's evidentiary ruling in question and, if so, to determine whether the error was harmless under the appropriate harmless-error test applicable to civil cases, i.e., whether declining to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment or order "appears to the court inconsistent with substantial justice." See MCR 2.613(A). Also see *Cox v Flint Board of Hospital Managers*, 467 Mich 1, 15 (2002).

Before trial, plaintiff moved in limine to exclude Officer Schweble's opinion testimony that plaintiff was not wearing his seat belt at the time of the accident on the basis that he was not qualified to render an expert opinion in this area. The trial court denied plaintiff's motion, ruling that the officer could offer his lay opinion on this subject under MRE 701. During trial, Officer Schweble testified that in his opinion, plaintiff was not wearing his seat belt, and plaintiff objected that there was insufficient foundation for the officer to provide his testimony in this regard.[11] The

---

[11] Officer Schweble testified at trial as follows:

*Q.* Can you tell the jury what your opinion is about whether the plaintiff was wearing a seat belt?

*A.* As I indicated on my report that I indicated that I felt that he—that they were not used that day.

*Q.* Now, what was it that you based that opinion on?

*A.* Because the defendant was ejected from the vehicle and the seat belts were there, you know, and the vehicle—I looked at them, I didn't test them, but they looked like they were in workable order and that's where I formulated my opinion because he was ejected.

\*     \*     \*

*Q.* Did you take that information [that plaintiff had stated to other individuals that he was wearing his seat belt] into account when you developed your opinion that you didn't believe that he had a seat belt on?

\*     \*     \*

trial court admitted Officer Schweble's opinion testimony over plaintiff's objection.

On appeal, plaintiff argues that the trial court improperly admitted Officer Schweble's testimony in violation of MRE 701. That rule provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

---

*A.* I took it into account but I just went from the facts that I found at the scene, from the evidence at the scene and that's what I formulated my opinion on that he wasn't wearing it.

\*    \*    \*

*Q.* Does your past experience serve as the basis for your opinion here?

*A.* Yes, it does.

*Q.* Can you tell us what it is about your past that had some affect [sic] on your opinion here?

*A.* Because I have had other incidents where I have investigated accidents where people have said they have their seat belt on and after questioning them a little bit they have admitted that they didn't.

*Q.* Is that one of the reasons that you concluded, based on what you saw at the scene, that the plaintiff wasn't wearing his seat belt?

\*    \*    \*

*A.* Yes, I did.

\*    \*    \*

*Q.* Trooper, can you tell us why it is that you did not just take the word of the plaintiff that was related to you from these other witnesses and rely on that and just say, okay, I'll say he was belted?

\*    \*    \*

*A.* Because I was just going by physical evidence at the scene.

Plaintiff argues that Officer Schweble's testimony was not "rationally based on the perception of the witness." On reconsideration, we conclude that the trial court did not err in admitting Officer Schweble's opinion testimony, because his testimony was based on his perceptions at the scene of the accident.

As this Court recently stated in *Bachman v Swan Harbour Assoc*, 252 Mich App 400, 438; 653 NW2d 415 (2002):

> The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. . . . An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made, *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 188; 600 NW2d 129 (1999), or the "result is so palpably and grossly violative of fact and logic that it evidences perversity of will, a defiance of judgment, or the exercise of passion or bias," *Barrett v Kirtland Community College*, 245 Mich App 306, 325; 628 NW2d 63 (2001).

Applying this standard to the facts of this case, we cannot state that the trial court abused its discretion in admitting Officer Schweble's opinion that plaintiff was not wearing his seat belt. Officer Schweble testified that he based his conclusion on the physical evidence on the scene, including his observations that plaintiff had been ejected from the vehicle and that the seat belt was in the retracted position and appeared to be in working order.

Plaintiff asserts that this Court's decision in *Miller v Hensley*, 244 Mich App 528; 624 NW2d 582 (2001), required exclusion of Officer Schweble's testimony. We disagree, because *Miller* is distinguishable from

the present case. In *Miller*, this Court found that the trial court had improperly admitted the opinion testimony of two police officers who stated that the plaintiff motorist was at fault for the accident at issue because she entered the intersection on a yellow light. *Id.* at 531. The officers in *Miller* did not observe the accident, however, and based their conclusion only on statements made to them by witnesses to the collision. *Id.* The Court concluded, "Because the officers' testimony that plaintiff was at fault for the collision was not rationally based on their own perceptions, the testimony was not admissible under MRE 701." *Id.*

Rather than *Miller*, we find that the facts in the instant case are more analogous to the facts in *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455-456; 540 NW2d 696 (1995), and *Mitchell v Steward Olford & Sons, Inc*, 163 Mich App 622, 629-630; 415 NW2d 224 (1987), where this Court held permissible the admission of police officers' lay opinion testimony regarding fault in automobile accidents even though the officers did not observe the actual collisions. *Richardson, supra* at 455; *Mitchell, supra* at 629-630. In each of these cases, this Court held that police officers were permitted to testify about their conclusions regarding such factors as vehicle speed and position derived from the officers' observations of skid marks created at accident scenes, because the officers' conclusions were rationally based on the officers' perceptions. *Richardson, supra* at 455; *Mitchell, supra* at 629-630.

Similarly, Officer Schweble's opinion was rationally based on his perception of the evidence that he found at the scene of the accident. We disagree with plain-

tiff's contention that Officer Schweble formed his opinion on the basis of his past experience in investigating automobile accidents and his awareness that on occasion, people who, in the course of accident investigations, initially said they were wearing seat belts later admitted that they had not been wearing them. A careful examination of Officer Schweble's testimony establishes that although his opinion in this case was consistent with conclusions he had drawn in other cases he had investigated, his past experience did not form the basis of his opinion testimony. Plaintiff correctly argued that, because Officer Schweble was not offered as an expert witness, his testimony about his past investigative experiences and how they related to his investigation of this accident was inadmissible on the basis that such testimony was collateral to the officer's lay opinion. However, the trial court's error in admitting this portion of Officer Schweble's testimony is not of a kind or sort that the failure to disturb the judgment in this case would be inconsistent with substantial justice. Therefore, the error in admitting this portion of the testimony was harmless. MCR 2.613(A); *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 15; 651 NW2d 356 (2002).

## B. SPECIAL JURY INSTRUCTION

Plaintiff also contends that the trial court erred in refusing to give his requested special jury instruction. We disagree. We review a trial court's decision regarding jury instructions for an abuse of discretion. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997). When a party so requests, a court must give a standard jury instruction if it is applicable and accurately states the law. MCR

2.516(D)(2). Nonetheless, we will not find error requiring reversal if, on balance, the trial court adequately and fairly conveyed the applicable law and theories of the parties to the jury. *Stevens v Veenstra*, 226 Mich App 441, 443; 573 NW2d 341 (1997).

Plaintiff's requested jury instruction stated: "I charge you under Michigan law that an automobile manufacturer like General Motors Corporation is liable for negligence in manufacture or inspection of parts of an automobile directly related to its safe operation even if the defective part was supplied by others." In lieu of the special instruction, the trial court provided the jury with the following jury instruction, modeled after the first paragraph of SJI2d 15.05: "If you decide that defendant General Motors Corporation was negligent and that such negligence was a proximate cause of the occurrence, it is not a defense that the conduct of Allied[-]Signal, who is not a party to this suit also may have been a cause of this occurrence." The court did not provide the jury with the second paragraph of SJI2d 15.05.

After reviewing the record in the instant case, it is apparent that plaintiff requested the special jury instruction only in the event that the trial court decided to instruct the jury with the second paragraph of SJI2d 15.05. The record also reveals that plaintiff agreed with the trial court's jury instructions as given. Thus, because plaintiff acquiesced in the trial court's decision to provide only the first paragraph of SJI2d 15.05 in lieu of the special jury instruction, plaintiff is not entitled to any relief with regard to this issue. *Hilgendorf v Saint John Hosp & Medical Ctr Corp*, 245 Mich 670, 683, 696; 630 NW2d 356 (2001); *Dresselhouse v Chrysler Corp*, 177 Mich

App 470, 477; 442 NW2d 705 (1989). Further, because the trial court also instructed the jury pursuant to SJI2d 25.31, and provided the jury with plaintiff's theory of the case, which pointed out that since defendant chose Allied-Signal to design and manufacture the seat belts in plaintiff's truck, defendant was responsible for any defect in those buckles, it is evident that the jury was not misled or confused by the failure to give plaintiff's requested jury instruction and that the instructions that were given adequately and fairly conveyed the applicable law and the theories of the parties. *Hilgendorf, supra* at 696, quoting *Grzesick v Cepela*, 237 Mich App 554, 559; 603 NW2d 809 (1999); *Stevens, supra* at 442. Accordingly, because we are unable to find error that is inconsistent with substantial justice, the jury verdict will not be reversed. *Hilgendorf, supra* at 696.

### C. DISCOVERY REQUESTS

Plaintiff further contends that the trial court erred in denying his discovery request that defendant be compelled to produce all crash and sled tests documents where the JDC buckle released during the test and also erred in denying plaintiff's discovery request for all civil claims, consumer complaints, and incident reports filed against defendant alleging that a JDC buckle opened during an accident. Specifically, plaintiff argues that the information regarding these tests is relevant because the tests involved the exact type of seat belt plaintiff's truck was equipped with at the time of the accident and that, even if inadmissible as a subsequent remedial measure under MRE 407, the information should have been discoverable. Again, we disagree.

This Court reviews a trial court's decision to grant or deny a discovery request for an abuse of discretion. *Harrison v Olde Financial Corp*, 225 Mich App 601, 614; 572 NW2d 679 (1997); *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50; 555 NW2d 871 (1996).

Here, plaintiff sought to discover tests and documents pertaining to vehicles manufactured several years after the truck plaintiff was driving on the day in question. In addition, the test results requested by plaintiff did not pertain to accidents similar to the one in which plaintiff was involved.[12] Thus, it is impossible for us to conclude that had defendant provided plaintiff with the requested material, plaintiff would have been able to find evidence that made it more probable that plaintiff's seat belt was negligently designed. See MRE 401. In addition, because plaintiff never indicated how the situations involved in the requested material were substantially similar to plaintiff's accident, the court was within its discretion to deny the discovery request. See *Haberkorn v Chrysler Corp*, 210 Mich App 354, 368-369; 533 NW2d 373 (1995).

We also note that a trial court is within its discretion to limit discovery when it becomes excessive or abusive. *In re Hammond Estate*, 215 Mich App 379, 387; 547 NW2d 36 (1996); *Hartmann v Shearson Lehman Hutton, Inc*, 194 Mich App 25, 29; 486 NW2d 53 (1992). Here, the additional discovery was requested eight years after the accident, almost five years after

---

[12] The recall involving 1994-1995 C/K pickups dealt with concerns involving seat belts releasing in frontal collisions, not rollover accidents. In addition, the seat belts involved in the recall involved energy management loops that were not present on plaintiff's seat belt.

the complaint was filed, and more than three years after discovery was closed. In addition, the trial had been adjourned several times previously, plaintiff had indicated at the April 13, 1998, motion hearing that he was almost ready for trial, and it is apparent that plaintiff sought the extra discovery in an effort to open a new theory of the case. We are unable to find an abuse of discretion from these facts.

Finally, the fact that the trial court ostensibly denied the discovery request on the basis of MRE 407 has no effect on our determination. Because the trial court reached the right result, this Court should not reverse the trial court's decision regarding this discovery request. See *Hilgendorf, supra* at 685, n 8, citing *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).

### III. CONCLUSION

In sum, because the trial court did not abuse its discretion in denying plaintiff's discovery requests, did not err in refusing to read plaintiff's special jury instruction, did not err in admitting Officer Schweble's opinion testimony based on his perceptions at the scene of the accident, and committed harmless error in permitting testimony on collateral matters, we are not persuaded that the jury verdict was in error.

Affirmed.