*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTIAN SCAVUZZO,

        Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellee,

and

HOME-OWNERS INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
April 25, 2019

No. 339637
Macomb Circuit Court
LC No. 2015-002444-NF

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Plaintiff filed suit against defendant Auto-Owners Insurance Company (AOIC), seeking the payment of personal protection insurance (PIP) benefits after plaintiff allegedly suffered injuries in a motor vehicle accident.[1] AOIC asserted that plaintiff engaged in extensive fraud with respect to claiming benefits under the policy. Following a five-day jury trial, the jurors had to go no further than the first question of the special verdict form, determining that plaintiff had indeed committed fraud. On the basis of the jury's verdict, the trial court entered an order dismissing plaintiff's cause of action. Plaintiff appeals as of right, and we affirm.

The special verdict form was comprised of seven separate questions, the first of which provided as follows:

---

[1] Defendant Home-Owners Insurance Company was dismissed from the case pursuant to a stipulated order.

Did the Plaintiff make a fraudulent statement or engage in fraudulent conduct with respect to procurement of the insurance policy or to an occurrence for which coverage is sought?

Occurrence is defined as an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful condition.[2]

The jury answered "yes" to the question posed in the first paragraph, which concluded its deliberations.

On appeal, plaintiff challenges the language of the first question of the special verdict form, contending that it was unfairly prejudicial to plaintiff because "it failed to instruct the jury on whom alleged fraudulent conduct must be made." More specifically, plaintiff argues:

The trial court's use of the non-standard jury verdict form . . . resulted in substantial injustice to [plaintiff]. The verdict form and the jury instructions did not provide that alleged misrepresentations or fraudulent statements must be made to [AOIC] in order to find that [plaintiff's] claims would be excluded by [AOIC's] policy exclusion. Due to this omission, [plaintiff] was substantially and unfairly prejudiced by the admission of evidence regarding his alleged failures to inform the federal government about his earned income.

As characterized by plaintiff, his appellate argument is predicated on AOIC's reliance on "non-statements to the IRS and the Social Security Administration" in establishing fraud. Plaintiff argues that "[i]t is undisputed that [AOIC] is not the federal government or an agent of the federal government." As we understand plaintiff's argument, the purported flaw in the special verdict form and instructions is that they failed to inform the jury that plaintiff's alleged fraudulent statements had to be made directly to AOIC. We conclude that this argument is wholly lacking in merit.

Claims of instructional error are reviewed de novo on appeal. *Alfieri v Bertorelli*, 295 Mich App 189, 197; 813 NW2d 772 (2012). "Jury instructions are reviewed in their entirety to determine whether they accurately and fairly presented the applicable law and the parties' theories." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008).

Along with the language in question one of the special verdict form,[3] the trial court instructed the jury that AOIC had to show that plaintiff made a willful misrepresentation of fact, that the misrepresentation was material, that the representation was in fact false, that plaintiff

---

[2] The insurance policy provided that AOIC "will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or any occurrence for which coverage is sought."

[3] Hereafter, our references to the "special verdict form" will pertain to the first question on the form concerning fraud.

knew that it was false when made or made it recklessly without knowledge of its truth, and that plaintiff made the misrepresentation with the intention that AOIC act upon it.

In regard to the special verdict form, the jury was asked whether plaintiff made a fraudulent statement or engaged in fraudulent conduct "with respect to procurement of the insurance policy or to an occurrence for which coverage [was] sought[.]" The nature of the question was such that it clearly called for examination of whether plaintiff made misrepresentations *to AOIC*, considering that in procuring a policy or filing a claim for an occurrence an insured would necessarily be engaged in making representations to AOIC. Moreover, with respect to the instruction on the elements of fraud recited in the preceding paragraph, we conclude it is implicit that AOIC had to be the target or recipient of any fraudulent statements because misrepresentations had to be made with the intention that AOIC act upon them.

Plaintiff's insurance claim submitted to AOIC included a request for wage loss, with plaintiff asserting lost wages of between $52,000 and $60,000 per year. AOIC presented evidence that plaintiff received disability benefits from the Social Security Administration (SSA) and that these benefits would be discontinued should he earn more than $1,170 per month. In conjunction with this evidence, AOIC produced evidence that plaintiff failed to report any income to the IRS or the SSA. Contrary to plaintiff's faulty reasoning, evidence of plaintiff's failures to disclose income to the IRS and the SSA supported AOIC's position that plaintiff made fraudulent statements to AOIC, where he directly claimed to AOIC that he had income ranging from $52,000 to $60,000.[4] The jury was not instructed in a manner that suggested that defrauding the federal government could serve as the basis for finding in favor of AOIC. In sum, there was no instructional error, no error with respect to the special verdict form, and no error as to the jury's verdict.

Plaintiff next argues that the trial court abused its discretion when it denied his request to admit into evidence the deposition testimony of AOIC's medical expert, who had not testified at trial on behalf of AOIC. Plaintiff contends that the expert had provided deposition testimony favorable to plaintiff, indicating that plaintiff had suffered injuries in the motor vehicle accident. We find no need to explore this issue in any great detail, considering that even if the court erred in not allowing the admission of the testimony, it was entirely harmless.

MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

---

[4] Additionally, AOIC presented evidence that plaintiff failed to disclose to his treating doctors and AOIC that he was involved in a high-speed rollover accident in 1998 and that he filed an insurance claim regarding that accident.

An evidentiary error does not warrant reversal if it was harmless. *Chastain v Gen Motors Corp*, 254 Mich App 576, 590; 657 NW2d 804 (2002). The evidence at issue would not have impacted or undermined the evidence of fraud, which ultimately was the sole basis of the jury's verdict, and AOIC did not dispute that plaintiff's medical treatment was reasonable and necessary, focusing instead only on fraud.[5] Reversal is unwarranted.

We affirm. Having fully prevailed on appeal, AOIC is awarded taxable costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

[5] A claims adjustor for AOIC testified that AOIC was "not disputing that [plaintiff's medical] treatment was reasonable and necessary." The court also noted that plaintiff had already presented testimony from his own medical expert regarding the necessity of the medical treatment that plaintiff had received after the accident. Furthermore, the claims adjuster acknowledged that AOIC's expert had concluded that the accident exacerbated plaintiff's "degenerative issues" and that the treatment plaintiff received was medically necessary. The adjuster additionally testified that AOIC denied plaintiff's claim based on fraud, which had nothing to do with whether plaintiff's treatment was reasonable. Defense counsel even stated that AOIC was "stipulating that the treatment was reasonable and necessary for [plaintiff's] injuries."