*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CRYSTAL SUE MOL,

      Plaintiff-Appellee,

v

JACOB CORNELIUS MOL III,

      Defendant-Appellee,

and

JACOB C. MOL, JR.,

      Appellant.

FOR PUBLICATION
December 30, 2024
10:30 AM

No. 370949
Ottawa Circuit Court
LC No. 18-089257-DM

---

CRYSTAL SUE MOL,

      Plaintiff-Appellee,

v

JACOB CORNELIUS MOL III,

      Defendant-Appellant.

No. 371184
Ottawa Circuit Court
LC No. 18-089257-DM

---

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

CAMERON, J.

These appeals involve a jurisdictional issue that arose from separate complaints in two different family courts. Litigation began when plaintiff, Crystal Sue Mol (Crystal), filed for separate maintenance and child custody in Ottawa Circuit Court (the "Ottawa court"). Defendant,

-1-

Jacob Cornelius Mol III (Jacob III), later filed a complaint for divorce in Kent Circuit Court (the "Kent court") that, again, raised the issue of child custody.[1]

In Docket No. 371184, Jacob III appeals by leave granted[2] the Ottawa court's order concluding that it had continuing and exclusive jurisdiction over custody, parenting time, and child support for the remaining minor children under the separate maintenance case. We hold that both circuit courts had subject-matter jurisdiction to decide the respective separate maintenance and divorce actions, but that the Ottawa court had plenary jurisdiction to decide the parties' child-custody issues. Accordingly, we affirm the Ottawa court's determination that it maintained exclusive jurisdiction over the child-custody issues.

In Docket No. 370949, Jacob C. Mol, Jr. (Jacob Jr.), Jacob III's father, appeals by leave granted[3] the Ottawa court's order denying his motion to quash or for a protective order of a subpoena of his banking records. We conclude that the Ottawa court did not err in denying Jacob Jr.'s motion. But, we hold that the Ottawa court abused its discretion by failing to consider Jacob Jr.'s alternative arguments.

We affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Crystal and Jacob III have been involved in contentious litigation for several years. They married in 2004 and had seven children during their marriage. In 2018, Crystal filed for separate maintenance and custody in the Ottawa court. The Ottawa court eventually conducted a trial. In 2020, the Ottawa court entered a judgment of separate maintenance that decided custody, parenting time, and child support.

The parties repeatedly asked the Ottawa court to intervene in their post-judgment disputes related to the separate maintenance order. One of their many disputes involved Crystal's assertion that Jacob III had hidden marital funds in Jacob Jr.'s bank account. In support of her assertion, Crystal attempted to obtain evidence of this by sending a subpoena to Jacob Jr.'s bank seeking a release of his bank records.

Crystal then moved to Kent County. In April 2024, Jacob III filed a complaint for divorce in the Kent court. The divorce complaint included Jacob III's request that the Kent court take jurisdiction over the parties' child-custody issues. Crystal moved the Kent court to dismiss or transfer the child-custody issues to the Ottawa court, arguing the Ottawa court had prior,

---

[1] For brevity, we refer to the issues involving support, custody, or parenting time as the "child-custody" issues.

[2] *Mol v Mol*, unpublished order of the Court of Appeals, entered June 11, 2024 (Docket No. 371184).

[3] *Mol v Mol*, unpublished order of the Court of Appeals, entered May 31, 2024 (Docket No. 370949).

continuing, and exclusive jurisdiction over these issues. She claimed that Jacob III's filing in the Kent court was his attempt to forum shop after receiving several unfavorable rulings in the Ottawa court. The Kent court denied Crystal's motion and retained jurisdiction over the divorce case. Importantly, it also assumed jurisdiction over the child-custody issues.

Jacob Jr. then moved the Ottawa court to quash or for a protective order of the subpoena Crystal had requested of his bank records. He asserted that the Ottawa court must quash the subpoena because it lost jurisdiction when the Kent court assumed jurisdiction over these issues. He argued that discovery requests could be maintained in the Kent court only. He also asserted that even if the Ottawa court still had jurisdiction, it should either quash the subpoena because it was beyond the scope of discovery or issue a protective order that required the records to be released to the court for *in camera* review. The Ottawa court denied Jacob Jr.'s motion, concluding it had continuing jurisdiction.

The Ottawa court determined that it had "prior, continuing jurisdiction over the matters of child custody, parenting time, and child support[,]" pursuant to its earlier judgment of separate maintenance. The Ottawa court declared that the Kent court had jurisdiction over the divorce and any remaining property-division issues, but could "not address any issues arising under the Michigan Child Custody Act [MCL 722.21 *et seq.*] because there is a prior action involving the same children which is already before [the Ottawa court]." These appeals followed.

## II. PROPER FORUM

Defendants argue that the Ottawa court erred in concluding it retained sole continuing jurisdiction to decide the parties' child-custody issues. In their view, the act of filing the divorce complaint in the Kent court divested the Ottawa court of subject-matter jurisdiction to issue new orders in matters involving the parties' minor children. We disagree.

## A. STANDARD OF REVIEW

"Whether a court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Teran v Rittley*, 313 Mich App 197, 205; 882 NW2d 181 (2015). This case also requires us to consider the proper interpretation of statutes and court rules, which we similarly review de novo. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023).

> This Court's primary task in construing a statute . . . is to discern and give effect to the intent of the Legislature. The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. When determining the plain meaning, this Court examines the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. The rules governing statutory interpretation also apply to court rules. [*Id.* (quotation marks and citations omitted, ellipses in *McGregor*).]

## B. LAW AND ANALYSIS

A fundamental question every court must ask itself is whether it has jurisdiction to hear the cases before it. See, e.g., *In re AMB*, 248 Mich App 144, 165; 640 NW2d 262 (2001). Jurisdiction has two parts—subject matter and personal. Subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *Grebner v Oakland Co Clerk*, 220 Mich App 513, 516; 560 NW2d 351 (1996). Personal jurisdiction is a court's authority to make decisions which affect the parties' rights and liabilities. See *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427-428; 633 NW2d 408 (2001).

In this case, the parties disagree whether the Ottawa court or the Kent court had subject-matter jurisdiction to hear the child-custody issues raised. With respect to subject-matter jurisdiction, circuit courts are Michigan's courts of general jurisdiction. See Const 1963, art 6, § 1. As such, they have " 'original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 334; 901 NW2d 566 (2017), quoting MCL 600.605; see also MCL 600.601.

"In Michigan, there is no common-law authority to grant a judgment of divorce. The jurisdiction of the circuit courts in matters of divorce is strictly statutory." *Stamadianos v Stamadianos*, 425 Mich 1, 5; 385 NW2d 604 (1986); see also *Herp v Herp*, 254 Mich 33, 36; 235 NW 850 (1931). MCL 552.6(1) states, in part: "A complaint for divorce may be filed in the circuit court upon the allegation that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." A circuit court's authority to order separate maintenance is also conferred by statute: "An action for separate maintenance may be filed in the circuit court in the same manner and on the same grounds as an action for divorce." MCL 552.7(1).

Circuit courts have the statutory authority to resolve a wide-range of disputes that arise during an action for divorce or separate maintenance. For example, a circuit court has jurisdiction to enforce its decrees to the same extent it had in other cases, see MCL 552.12; to order spousal support and the payment of attorney fees, see MCL 552.13; and to divide marital property, see MCL 552.19. Circuit courts have authority to "enter orders concerning the care, custody, and support of the minor children of the parties during the pendency of the action[,]" MCL 552.15(1); and, upon entering a decree of dissolution or separate maintenance, to "enter the orders it considers just and proper concerning the care, custody, and . . . support of a minor child of the parties[,]" MCL 552.16(1). Circuit courts also have continuing jurisdiction to "revise and alter a judgment concerning the care, custody, maintenance, and support of all of the children, as the circumstances of the parents and the benefits of the children require." MCL 552.17(1).

Accordingly, the Ottawa court had subject-matter jurisdiction to decide the separate maintenance action under MCL 552.7(1) and the Kent court could adjudicate the divorce under MCL 552.6(1). Each court also had jurisdiction to resolve any custody disputes involving the parties' children, MCL 552.15(1), MCL 552.16(1), and to amend or modify any judgments and orders thereafter under MCL 552.17, subject to MCL 722.27(1)(c).

Because these courts had concurrent subject-matter jurisdiction over the child-custody issues, we turn to MCR 3.205(A) which governs a subsequent court's jurisdictional authority to address these issues:

> (A) Jurisdiction.  If an order or judgment has provided for continuing jurisdiction of a minor and proceedings are commenced in another Michigan court having separate jurisdictional grounds for an action affecting that minor, a waiver or transfer of jurisdiction is not required for the full and valid exercise of jurisdiction by the subsequent court.  [MCR 3.205(A).]

Before the adoption of MCR 3.205(A), trial courts had limited guidance regarding how to resolve jurisdictional disputes between courts with concurrent jurisdiction.  For example, in *Krajewski v Krajewski*, 420 Mich 729; 362 NW2d 230 (1984) our Supreme Court resolved a jurisdictional issue involving a child under the continuing jurisdiction of the Berrien Circuit Court through an earlier child-custody order.  *Id*. at 732.  Subsequently, the Berrien Probate Court, Juvenile Division, assumed jurisdiction over the child due to allegations of neglect, under MCL 712A.2(b).  *Krajewski*, 420 Mich at 732.  Our Supreme Court concluded that nothing in MCL 712A.2(b) reflected the Legislature's intent to limit or proscribe the probate court's jurisdictional authority.  *Krajewski*, 420 Mich at 733-734.  Therefore, the probate court was free to make a "full and valid" exercise of its jurisdiction.  *Id*. at 734.

Relatedly, in *In re DaBaja*, 191 Mich App 281; 477 NW2d 148 (1991), the child was under the continuing jurisdiction of the Wayne Circuit Court through his parents' divorce and ancillary child-custody dispute.  *Id*. at 288.  Later, the Wexford County Probate Court assumed concurrent jurisdiction over the child under MCL 710.24 of Michigan's Adoption Code, MCL 710.21, *et seq. DaBaja*, 191 Mich App at 288.  This Court determined that the Wayne County Court retained jurisdiction of the custody matter and the Wexford County Probate Court could exercise its full jurisdiction because the courts' respective jurisdictional grounds were entirely separate.  *DaBaja*, 191 Mich App at 289.

Turning now to MCR 3.205(A), the question here is whether the child-custody issues raised in the Kent County divorce case arose under "separate jurisdictional grounds" from the child-custody issues that were already pending in the Ottawa County separate-maintenance case.  We conclude that they did not.  MCL 552.16(1) authorizes a court "[u]pon annulling a marriage or entering a judgment of divorce or separate maintenance" to "enter the orders it considers just and proper concerning the care, custody, and . . . support of a minor child of the parties."  MCL 552.16(1) expressly provides that the jurisdiction of a court to enter child-custody orders under divorce or separate-maintenance actions arise from the *same* jurisdictional ground.   Therefore, MCR 3.205(A) does not permit the Kent court's plenary exercise of jurisdiction because it is the "subsequent" court in this case.

Although MCR 3.205(A) resolves this dispute, the parties spend much of their argument analyzing *Engemann v Engemann*, 53 Mich App 588, 589; 219 NW2d 777 (1974).  In *Engemann*, the wife filed a separate maintenance and ancillary child-custody action in Ionia County.  The husband later filed a subsequent divorce and ancillary child-custody action in Lake County.  *Id*. at 589-590.  On appeal, this Court was faced with an argument not raised here: whether res judicata barred the subsequent divorce action.  *Id*. at 591.  We concluded that "there is such a substantial

-5-

difference between [an action for separate maintenance] and a divorce from the bonds of matrimony that the principles of res judicata do not apply." *Id*. at 594. Thus, "[w]here a trial court has jurisdiction to grant a divorce . . . it is mandatory that the court dispose of the related matters of alimony, support and property." *Id*.

We are not persuaded by *Engemann*'s conclusion that a court in a subsequent divorce action *must* decide matters of child-custody anew. *Engemann* was decided nearly 20 years before the adoption of MCR 3.205(A), a court rule designed to resolve jurisdictional questions like the one presented here. We are bound to follow the reasoning of the court rule where, as it did here, it implicitly overturned caselaw. See *Carter v DTN MGT Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165425); slip op at 12 (courts are bound by court rules which implicitly overturn procedural pronouncements in caselaw). To the extent the court rule deviates from our opinion in *Engemann*, the court rule change was intended to "clarify the relative responsibilities when two courts have asserted jurisdiction." MCR 3.205, 1993 Staff Comment.[4] We further note that while *Engemann* has precedential effect under the rule of stare decisis, it was decided in 1974, and is therefore not binding authority. *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022) ("Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon us, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed.").

We therefore overrule *Engemann*'s conclusion that ancillary child-custody issues must be addressed in a subsequent divorce action. *Engenmann*'s conclusion is contradictory to MCR 3.205(A), which limits the role of the subsequent court in proceedings affecting minors. We hold that where two courts' jurisdictional bases are the same, the subsequent court's jurisdictional authority is circumscribed, unless there is a waiver or transfer of jurisdiction of child-custody issues.

Our holding is buttressed by MCR 3.204(A)(1), which governs new actions concerning child-custody issues already pending in another court:

---

[4] We recognize that *Engemann*'s holding has been cited in this Court's more recent and binding case, *McCormick v McCormick*, 221 Mich App 672, 681; 562 NW2d 504 (1997). *McCormick*'s reference to *Engemann* was not necessary to decide the relevant issues and was therefore merely dicta that is not binding for purposes of stare decisis. *Foreman v Foreman*, 266 Mich App 132, 139; 701 NW2d 167 (2005). We recognize that "[t]he application of stare decisis is generally the preferred course, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *People v Tanner*, 496 Mich 199, 250; 853 NW2d 653 (2014) (quotation marks and citation omitted). Factors to consider in determining whether to overrule a decision include "whether the decision at issue defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id*. at 250-251 (quotation marks and citation omitted). Here, because MCR 3.205(A) modified what *Engemann* said decades ago, there are no reliance concerns and the law no longer justifies that decision.

(A) Unless the court orders otherwise for good cause, if a circuit court action involving child support, custody, or parenting time is pending, or if the circuit court has continuing jurisdiction over such matters because of a prior action:

(1) A new action concerning support, custody or parenting time of the same child must be filed as a motion in the earlier action if the relief sought would have been available in the original cause of action. If the relief sought was not available in the original action, the new action must be filed as a new complaint. [MCR 3.204(A)(1).]

Here, the correct application of this court rule depends on whether the relief sought in the divorce action "would have been available" in the earlier separate maintenance action. Jacob III's complaint for divorce asked the Kent court to:

[D]eclare the inherent rights of the children and establish the rights and duties of the parties regarding custody, support, and parenting time (taking into consideration the alienation of the children by the Mother against the Father), childcare expenses, both before and after judgment in accordance with the provisions of MCL 722.21, *et seq.*, and MCL 552.15[.]

This relief sought in the Kent Court was available in the Ottawa court's separate maintenance action. MCL 552.15(1); MCL 552.16(1). Therefore, MCR 3.204(A) required that Jacob III raise his new child-custody action through the Ottawa court's continuing jurisdiction, not as a separate action in Kent County.

In sum, the Ottawa court has jurisdiction to decide the parties' separate-maintenance action, MCL 552.7(1), and the Kent court can properly adjudicate the parties' divorce, MCL 552.6(1). While the courts have concurrent subject-matter jurisdiction over the child-custody issues, our court rules restrict the Kent court's authority to exercise that jurisdiction. Because the child-related relief sought in Jacob III's complaint for divorce was available in the separate maintenance action, he was required to move for that relief in the Ottawa court.

III. SUBPOENA OF JACOB JR.'S FINANCIAL RECORDS

Jacob Jr. argues that the Ottawa court abused its discretion in denying his motion to quash on the sole basis that it had continuing jurisdiction to enforce its orders. We agree.

A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion to quash a subpoena for an abuse of discretion. See *Chastain v Gen Motors Corp (On Remand)*, 254 Mich App 576, 593; 657 NW2d 804 (2002). This Court also reviews for an abuse of discretion a trial court's decision on a motion for a protective order. *Alberto v Toyota Motor Corp*, 289 Mich App 328, 340; 796 NW2d 490 (2010). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017).

## B. LAW AND ANALYSIS

"Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice." *Woodington v Shokoohi*, 288 Mich App 352, 361; 792 NW2d 63 (2010) (quotation marks and citations omitted). As such, Michigan's discovery rules "are to be liberally construed in order to further the ends of justice." *Id.* (quotation marks and citations omitted). Nevertheless, the Michigan's court rules also provide significant protections from excessive or improper discovery practices:

> Michigan's court rules regulate the use of discovery in a civil proceeding. Although the scope of discovery is broad, the discovery must be relevant to the subject matter and must not be privileged. See MCR 2.302(B)(1). Moreover, to the extent that a party or person from whom discovery is sought objects to a discovery request, that party or person may seek a protective order to prevent annoyance, embarrassment, oppression, or undue burden or expense. See MCR 2.302(C). The rules further authorize trial courts to provide significant protections against unreasonable discovery requests. See *id.* And improper discovery requests may be subject to sanction. See MCR 2.302(G). Finally, a party aggrieved by a trial court's decision to order discovery may appeal the trial court's decision in this Court. See MCR 7.203(B)(1). [*Martin v Martin*, 331 Mich App 224, 245-246; 952 NW2d 530 (2020).]

Crystal's lawyer was authorized to issue a subpoena to a nonparty, such as Jacob Jr., for the production or inspection of documents. See MCR 2.305(A). The person subject to a subpoena may move to quash or modify the subpoena on the grounds that the subpoena is unreasonable or oppressive, MCR 2.305(A)(4)(a), and may seek a protective order under MCR 2.302(C), MCR 2.305(A)(4)(b).

Jacob Jr. moved to quash the subpoena of his banking records on the grounds that the Ottawa court lacked jurisdiction to consider any further custody disputes involving Jacob III and Crystal, but also because he felt that the request was overly broad, irrelevant, and excessive. He also asked for a protective order consistent with MCR 2.302(C). The Ottawa court did not offer any explanation for its decision to deny Jacob Jr.'s motion to quash beyond its assertion that it had continuing jurisdiction. It failed to address Jacob Jr.'s grounds for quashing the subpoena and failed to address his request for a protective order under MCR 2.302(C). Generally, a trial court does not have to make findings of fact and state its conclusions of law when deciding a motion. MCR 2.517(A)(4). Nevertheless, on this record, it appears that the Ottawa court denied Jacob Jr.'s motion solely on the basis that it still had jurisdiction to enforce its orders. This is not a sufficient basis for denying Jacob Jr.'s motion to quash the subpoena as excessive under MCR 2.305(A)(4), or to enter a protective order under MCR 2.302(C). Accordingly, the Ottawa court's decision fell outside the range of reasonable and principled outcomes because it failed to consider these alternative arguments. *In re Guardianship of Redd*, 321 Mich App at 403.

We affirm the Ottawa court's decision to deny Jacob Jr.'s motion to quash on the ground that the court no longer had jurisdiction to enforce its custody orders, but reverse its decision to the extent that it failed to consider Jacob Jr.'s motion with respect to his alternative grounds for

relief. We therefore remand this case to the Ottawa court for proper consideration of these alternative grounds.

Affirmed in part, reversed in part, and remanded to the Ottawa court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Christopher M. Murray