*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRANCE DUANE TUCKER,

        Defendant-Appellant.

UNPUBLISHED
May 27, 2021

No. 350872
Oakland Circuit Court
LC No. 2019-270715-FH

Before: RONAYNE KRAUSE, P.J., and RIORDAN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.13, to 6 to 20 years' imprisonment for each conviction. We affirm defendant's convictions,[1] but we remand for the ministerial task of correcting defendant's presentence investigation report (PSIR).

## I. BACKGROUND

This case arises out of an investigation by the Narcotics Enforcement Team (NET) of the Oakland County Sherriff's Department. On February 25, 2019, Detective Patrick Bilbey, Jr., an undercover detective on the NET, contacted defendant to purchase methamphetamine. He spoke with defendant on the phone, and the two met up later that night at a dollar store, where Bilbey purchased methamphetamine from defendant. On February 26, 2019, Bilbey contacted defendant again, and the two met up later in the night at a party store, where Bilbey purchased more methamphetamine from defendant. During both drug transactions, Officer Mariusk Skomski and Sergeant Jeffrey DeVita conducted surveillance nearby. The substances Bilbey purchased tested positive for methamphetamine.

---

[1] Defendant does not raise any specific challenges to his sentences.

Defendant's theory of the case was not that the drug transactions had not occurred, but rather that he had been misidentified as the seller. Defendant generally contended that none of the officers had an opportunity to take a good look at him, that the police found neither drugs nor any NET-identified money when they searched the place where he was living, and that there was generally no corroborating evidence linking him to the transactions. Nevertheless, the seller used a black Yukon during both drug transactions, and the license plate affixed to the Yukon revealed it to be registered to Tira Foster, defendant's significant other. Foster was also the driver of the Yukon during the second drug transaction. The same Yukon was found at the residence, and it was found to contain mail addressed to defendant.

Defendant was charged with two counts of delivery of methamphetamine on the basis of the two drug transactions. He was convicted as described. Defendant now appeals.

## II. EVIDENTIARY ISSUES

Defendant first contends that the trial court committed several evidentiary errors. He argues that the trial court erroneously permitted the police officers to provide expert testimony that was irrelevant and prejudicial, and the trial court also erred by admitting that expert testimony without first qualifying the officers as experts. He also argues that the trial court erroneously permitted Bilby to provide lay voice identification testimony, thereby invading the province of the jury. For the most part, we disagree, and we conclude that to the extent any error may have occurred, it was harmless.

## A. STANDARDS OF REVIEW

Defendant did not raise objections at trial to the alleged evidentiary errors, so his evidentiary challenges are not preserved for appeal. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Generally, "[t]his Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). "A trial court necessarily abuses its discretion when the court permits the introduction of evidence that is inadmissible as a matter of law." *Id*. "An error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party." *Id*. Questions of law, such as constitutional questions or the interpretation and application of the rules of evidence, are reviewed de novo. *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018).

However, this Court reviews unpreserved issues for plain error. *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). To establish plain error, "it must be found that (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected the defendant's substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. RELEVANCE OF OFFICERS' TRAINING AND EXPERIENCE

Defendant first argues that it was irrelevant and prejudicial for Bilbey, Skomski, and DeVita to each describe their training and experience before testifying. Defendant contends that

the testimony should therefore not have been admitted pursuant to MRE 401 and MRE 402. Defendant relies on an out-of-context quotation from the highly distinguishable civil case of *Chastain v General Motors Corp*, 254 Mich App 576; 657 NW2d 804 (2002). In *Chastain*, this Court held that a police officer's lay opinion testimony that the plaintiff had not been wearing a seat belt was properly based on the officer's observations at the scene, but that the officer's "testimony about his past investigative experiences and how they related to his investigation of this accident" had been irrelevant (albeit harmless). *Id*. at 585-590. In context, this Court was referring to the officer's testimony that he had investigated other accidents in which people initially claimed to be wearing seat belts but later admitted that they were not wearing seat belts, and that his experience with those investigations was one of the reasons he concluded that the plaintiff had not been wearing his seat belt. *Id*. at 586 n 11. The erroneous testimony in *Chastain* therefore involved a police officer concluding as a layperson that a factual event had occurred on the basis of his experience.

In contrast, the officers' backgrounds in this case were properly provided to give essential context and foundation to other parts of their testimonies. For example, Skomski and DeVita knew defendant's probable appearance before the controlled drug purchase because they recognized him from presurveillance information and the photograph on the LEIN. Likewise, Bilbey's training and experience provided a foundation for his knowledge of drug terminology and slang, and his knowledge of a third person he and defendant discussed. All three officers' identifications of defendant properly came from their personal observations of defendant. See *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). Their identifications did not come from any implication that their backgrounds conferred any exceptional ability to recognize or identify defendant.

We conclude, as we will discuss further, that the officers' backgrounds were relevant to provide important context. We do not find their backgrounds to have bolstered their credibilities. Furthermore, the trial court properly instructed the jury that the jurors must assess the credibility of the witnesses, including the police officers, determine the weight of their testimony, consider the ability of the witnesses to identify defendant, and judge the testimony of the officers by the same standard as any other witness. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

## C. UNQUALIFIED EXPERT TESTIMONY

Defendant next argues that the officers provided expert opinion testimony without being qualified as experts and without ensuring that their expert testimonies were valid. We disagree.

We reiterate that defendant's theory of the case was not that the controlled purchases of methamphetamine never occurred. During opening argument, defense counsel expressly conceded that there had been two drug transactions that tested positive for methamphetamine; and during closing argument, defense counsel argued that the officers misidentified defendant and had found no corroborating evidence of defendant's involvement in the drug transactions. Errors pertaining to uncontested matters generally cannot be said to affect a defendant's substantial rights. *People v Kowalski*, 489 Mich 488, 506; 803 NW2d 200 (2011). To the extent defendant's claims of error pertain to matters other than his claim of misidentification and the lack of corroborating evidence, any error cannot have affected the outcome of the proceedings. MRE 103(a); MCR 2.613(A);

-3-

*Carines*, 460 Mich at 763. Similarly, to the extent defendant challenges Bilbey's testimony regarding cellphone tower data, the topic was broached by defense counsel during cross examination in a reasonable effort to discredit the investigation; therefore, any error was invited and not subject to appellate review. See *People v McPherson*, 263 Mich App 124; 138-139; 687 NW2d 370 (2004).

In any event, defendant seemingly confuses opinion testimony with background testimony. Opinion testimony is, by definition, testimony as to some conclusion *other than* relating a relevant observed fact. See *Klabunde v Stanley*, 384 Mich 276, 282; 181 NW2d 918 (1970). MRE 701 and 702 both pertain to rendering of opinion testimony by lay and expert witnesses, respectively. However, much of the testimony defendant challenges was not opinion testimony at all. For example, testimony regarding the use of vulgar language during drug transactions, or translating certain drug-related slang and jargon, were merely background details to permit the jury to understand the substantive events that occurred. Critically, the officers were simply providing knowledge derived from their own extensive experiences. MRE 602. "Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." *Id*. As discussed above, the officers' testimonies regarding their background and experience was directly relevant to establish that they had the personal knowledge from which to testify about how undercover narcotics operations worked, what various slang terms meant, the importance of maintaining secrecy, the likelihood of successfully obtaining fingerprints from plastic bags of drugs, the typicality of certain procedures during controlled purchases, and indeed most of the rest of the testimony defendant challenges.

Other than defendant's separate challenge regarding voice identification, the only item of defendant's challenged testimony that potentially appears to constitute a lay *opinion* was testimony that the vehicle in which defendant was driven from the second drug transaction appeared to be engaging in "cleaning" or "counter-surveillance." Skomski explained:

> Cleaning is very simple. You do very radical stops, turns. You stop, turn around and go the other way. Maybe run a red light, maybe go the wrong way down the one-way street just to see are we being followed.
>
> And that is exactly what the GMC Yukon was doing. It was just circling the area, doing—turning around, going the other way[.]

It was clearly proper for Skomski to testify what he observed while attempting to follow the vehicle. Testifying that the vehicle was engaging in counter-surveillance, however, is a conclusion derived from his knowledge and experience, and therefore it was an opinion. Nevertheless, defendant does not contend that Skomski would not have qualified as an expert. Skomski's background as a police officer of 11 years, and part of the NET for more than 3 years, suggests that he did have the requisite "knowledge, skill, experience, training, or education" to qualify as an expert. MRE 702. Where a witness provides lay opinion testimony based on his or her personal experience and knowledge, and the witness clearly would have qualified as an expert, any error in failing to qualify that witness as an expert is harmless. See *Dobek*, 274 Mich App at 76-79.

We conclude that the testimony defendant challenges was either not relevant to his theory of the case, not opinion testimony at all, or at worst harmless error. As discussed, defendant's

-4-

theory of the case was misidentification and a lack of corroborating evidence. Bilbey testified that, when he met with defendant in person for the first time, he was sure it was defendant because he recognized him from defendant's photograph on LEIN, his height was consistent with the LEIN information, and he had the same voice as the person he had spoken to on the phone earlier in the day. Bilbey made an in-court identification, and stated that he had "no doubt" that defendant was the same person he met with on February 25, 2019, and February 26, 2019.

Skomski testified that that he saw defendant during both drug transactions. While surveilling the area of the first drug transaction, he saw a black Yukon pull into a nearby Coney Island. A shorter African-American man exited the passenger side of the Yukon and entered the dollar store. After Bilbey informed Skomski that defendant was leaving the dollar store, Skomski saw the same man exit the dollar store and walk in the direction of Skomski's vehicle. The man walked within 10 feet of Skomski. Skomski stated that at that time, he could "clearly" see the man's face and see that the man matched the presurveillance description of defendant. When defendant was approximately 40 feet behind Officer Skomski's vehicle, defendant got into the passenger side of the Yukon. On February 26, 2019, Officer Skomski saw defendant again, and he also identified defendant's significant other, Tira Foster, as the driver of the Yukon. The Yukon's license plate number was obtained during both transactions; the Yukon was registered to Foster.

DeVita also testified that, on February 25, 2019, while parked in an undercover vehicle nearby the transaction location, he observed an individual, who matched the description of defendant, exit a black Yukon and go into the dollar store. The same person exited the dollar store after Bilbey informed the officers that the transaction was complete. On February 26, 2019, DeVita parked his vehicle in front of the Rockwell Party Store, where he was able to see defendant meet Bilbey outside the Rockwell party Store, approximately 30 feet from DeVita. When defendant left the Rockwell Party Store, DeVita could "clearly" see defendant's face, and DeVita had "zero doubt" that the person he saw was defendant.

A positive identification by a single eyewitness can constitute sufficient evidence to support a conviction beyond a reasonable doubt. See *People v Davis*, 241 Mich App 697, 699-700; 617 NW2d 381 (2000). Furthermore, the identification of the Yukon as being registered to and driven by defendant's significant other, along with mail addressed to defendant eventually being found in the same Yukon, certainly constitutes corroborating evidence. The considerable eyewitness testimony directly identifying defendant as the person who sold the methamphetamine, and the corroborating evidence in the form of the Yukon, shows that any errors asserted by defendant did not affect his substantial rights. *Carines*, 460 Mich at 763.

## D. LAY OPINION TESTIMONY

Defendant also argues that the trial court erred in allowing Bilbey to provide lay opinion testimony identifying defendant's voice on two recordings because it invaded the province of the jury. We disagree.

A lay witness may provide opinions or inferences which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. "[A] witness cannot express an opinion on the

defendant's guilt or innocence of the charged offense[.]" *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation and quotation marks omitted). "[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980).

During the trial, the prosecution played two recorded phone calls between Bilbey and the methamphetamine seller. The prosecution also played a recorded phone call between defendant and Foster. Defendant stipulated that he was the person talking to Foster in the latter recording. Just before playing the phone call with Foster, the following testimony occurred:

> [*Prosecutor*]: Eventually were you able to get a recorded line for the defendant? Recorded phone call?
>
> [*Detective Bilbey*]: Yes.
>
> [*Prosecutor*]: Okay. And did you happen to have an opportunity to listen to this recorded phone call?
>
> [*Detective Bilbey*]: Yes.
>
> [*Prosecutor*]: Okay. And the recorded phone call that you obtained, is it the defendant—is it the same voice that you heard on February 25th and February 26th?
>
> [*Detective Bilbey*]: Yes.
>
> [*Prosecutor*]: Okay. And how do you know that it's the same voice?
>
> [*Detective Bilbey*]: Again, because of the tone and the sound of the voice.

Defendant contends that because the three recordings were played for the jury, Bilbey was in no better position than the jury to determine whether there was a match between the voices in the recordings. Defendant therefore contends that Bilbey's testimony constituted improper lay opinion testimony that the voices matched, and therefore opining that defendant was the person who sold him methamphetamine. The prosecution argues that Bilbey was not matching voices between the three calls, but rather stating that the voice on the call with Foster matched the voice Bilbey heard in person during the controlled purchases.

We agree with defendant that the jury was situated to determine whether the voice in the first two phone calls matched the voice in the third phone call. Conversely, because the jury was not present during the controlled purchases, Bilbey would be in a better position to determine whether the individual he spoke to in person had the same voice as the individual on the recording. Unfortunately, the record does not disclose whether Bilbey was comparing the voice on the third recording to the voice in the first two recordings, or to the voice Bilbey heard in person during the

purchases, or possibly to both.[2] We note that a close evidentiary question generally cannot constitute an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). Given the ambiguity and the fact that the jury was given the opportunity to make its own independent determination of whether the voices in the recordings matched, we are unable to conclude that any error plainly occurred or affected defendant's substantial rights. *Carines*, 460 Mich at 763.

## III. JURY INSTRUCTIONS

Defendant argues that the trial court erred in failing to ensure that the jury could distinguish between lay and expert testimony from the police officers. We disagree.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Dobek*, 274 Mich App at 82. However, defendant's approval of the jury instructions effectively waived this issue. Waiver is "the intentional relinquishment or abandonment of a known right." *Kowalski*, 489 Mich at 503 (citation and quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (citation and quotation marks omitted). Nonetheless, even if we treat the issue as merely unpreserved because defendant failed to object or request a jury instruction, *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000), our review would be for plain error. *Solloway*, 316 Mich App at 197.

As discussed, there was only one item of testimony that arguably constituted expert opinion testimony, and we have concluded that it was harmless. Moreover, the jury was instructed that only one expert witness, a forensic chemist, testified at trial, the officers' testimony should be weighed as any other lay witness, the jury must choose which witnesses to believe, and it was free to accept or reject what a witness said. The jury was therefore effectively instructed that the officers were *not* experts. In addition, the officers were the only witnesses to provide identification testimony, and the trial court instructed the jury that it should consider how credible it found the identification testimony. Even if the trial court erred in failing to specifically instruct the jury that the officers had testified in dual roles, the jury instructions cured any potential prejudice or risk of the jury giving undue weight to the testimony of the officers. *Mahone*, 294 Mich App at 212.

## IV. CUMULATIVE ERROR

Defendant argues that the jury convicted him as a result of the cumulative errors. We disagree. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Reversal may be warranted where several minor errors occurred, even though none of them would be sufficient standing alone, but those errors must

---

[2] We think it more likely and more logical that Bilbey would have been drawing a comparison to the voice he heard in person, but we cannot know that from this record.

nevertheless have had some prejudicial effect. *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). To the extent any errors occurred, none of them were of any practical consequence. Therefore, they cannot have any cumulative effect and cannot warrant reversal. *Id.*

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel. We disagree.[3]

### A. STANDARD OF REVIEW

As an initial matter, our conclusion that no plain error occurred does not foreclose defendant's claim of ineffective assistance of counsel. *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, 316 Mich App at 187. "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id.* at 188. If no evidentiary hearing has been held, this Court's review is generally restricted to mistakes apparent from the record. *Id.* However, defendant preserved this issue by moving to remand for an evidentiary hearing. *People v Abcumby-Blair*, ___ Mich App ___, ___: ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8. We may therefore remand for an evidentiary hearing after plenary review. *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044, decided February 18, 2021), slip op at p 10.

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). "Defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

### B. FAILURE TO OBJECT TO AN UNIDENTIFIED INFORMANT

Defendant argues that defense counsel provided ineffective assistance by failing to object to testimony regarding an unidentified informant. We disagree.

"Generally, the people are not required to disclose the identity of confidential informants." *People v Henry (After Remand)*, 305 Mich App 127, 156; 854 NW2d 114 (2014) (citation and quotation marks omitted). "However, when a defendant demonstrates a possible need for the

---

[3] We also note that during sentencing, the trial court specifically commended trial counsel's "outstanding job" endeavoring to instill reasonable doubt into what the trial court aptly regarded as "a fairly straightforward case." To the extent this can be regarded as a factual finding by the trial court, after plenary review, we agree.

informant's testimony, a trial court should order the informant produced and conduct an in camera hearing to determine if the informant could offer any testimony beneficial to the defense." *Id*. "Whether a defendant has demonstrated a need for the testimony depends on the circumstances of the case and a court should consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. (citation and quotation marks omitted).

During direct examination, Bilbey testified that, when he met with defendant for the first drug purchase, he and defendant mentioned the name "Tone." Bilbey and defendant discussed Tone in their phone calls, and Bilbey explained that Tone was "a mutual friend that we know." Bilbey further explained that he mentioned Tone so "that way we knew each other and what the purpose I was there for." There was no evidence suggesting that Tone was an informant. From context, after reviewing the phone call during which Tone was discussed, it appears that Bilbey essentially dropped Tone's name in order to provide credibility for himself so that defendant would trust him.

Defendant contends that Tone was mentioned as a back-door way to introduce prejudicial evidence of his guilt. We agree in part that the references to Tone suggested that a third person believed that defendant sold methamphetamine. However, "[a]ll relevant evidence is prejudicial to some extent" and should be excluded "under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018). "In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is *unfairly* prejudicial." *Id*. (emphasis in original).

Defendant does not contend that references to Tone were irrelevant, and given how little information was conveyed about him, we are unable to conclude that the passing references to Tone were substantially more unfairly prejudicial than probative. Counsel cannot be faulted for failing to make a futile objection. Further, defense counsel may have reasonably concluded that objecting to the references to Tone might have done more harm than good by drawing further attention to a third person who might have known that defendant sold methamphetamine. Thus, defendant has failed to establish that defense counsel provided ineffective assistance of counsel on this basis.

### C. FAILURE TO OBJECT TO TRAINING AND EXPERIENCE TESTIMONY

Defendant contends that defense counsel provided ineffective assistance by failing to object when police officers provided irrelevant testimony regarding their training and experience. We disagree.

As already discussed, the officers' testimonies regarding their training, experience, and background was relevant. The testimony regarding their backgrounds in law enforcement was essential foundational testimony that connected the officers to their participation in this particular case. Further, it was relevant to each officer's ability to engage in surveillance, engage in undercover drug transactions, and recognize criminal activity. Defendant contends that the

minimal value of the testimony was outweighed by the prejudice to defendant because the testimony bolstered the officers' credibility. We disagree.

As discussed, the primary issue in this case was identification. There was no implication that the officers' training or experience enhanced their abilities to see defendant during the drug purchases or make in-court identifications. Further, the jury was properly instructed that it should evaluate each officer's testimony like that of any other lay witness and that it may accept or reject any part of their testimony. Any risk of bolstering the credibility of the officers was presumptively cured by the jury instruction, *Mahone*, 294 Mich App at 212, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, it was not objectively unreasonable when defense counsel failed to object to testimony of the officers' training and experience, because such an objection would have been futile.

## D. FAILURE TO OBJECT TO "EXPERT" TESTIMONY

Defendant also argues that defense counsel provided ineffective assistance by failing to object to expert testimony by the officers when they had not been qualified as experts. We disagree. Because the officers did not testify as experts, such an objection would likely have been futile. Moreover, defense counsel may have decided not to object to improper "expert" testimony to avoid the jury conferring expert status upon each officer's testimony. Thus, defendant has failed to overcome the presumption of sound trial strategy.

## E. FAILURE TO OBJECT TO IMPROPER LAY OPINION TESTIMONY

Defendant also argues that defense counsel provided ineffective assistance when he failed to object to Bilbey's voice identification testimony because it was improper lay opinion testimony. We disagree. As discussed, the record is not clear whether Bilbey was comparing the voices in the phone recordings to each other or to the voice he heard in person. The better practice would have been for some kind of clarification to have occurred. However, Bilbey may have been comparing the voice on the calls to the voice he heard in person. Therefore, if defense counsel had objected, it is doubtful that any ensuing clarification would have been favorable to defendant. Furthermore, it is not clear that it was defense counsel's obligation to seek clarification. In any event, as discussed, we are not persuaded that any error was prejudicial, given the jury's own ability to compare voices on the recordings and the significant eyewitness identification independent of defendant's voice. Therefore, we cannot conclude that the failure to object fell below an objective standard of reasonableness or likely affected the outcome of the proceedings.

## F. FAILURE TO REQUEST A JURY INSTRUCTION

Defendant argues that defense counsel provided ineffective assistance of counsel by failing to request a jury instruction on drug-profile evidence. We disagree.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *Dobek*, 274 Mich App at 82. "Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999) (quotation marks and citations omitted). "A profile is simply an investigative technique. It is nothing more than a listing

of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *Id*. (citation and quotation marks omitted). "Such evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *Id*. at 53. Pursuant to M Crim JI 4.17, the jury may be instructed, in relevant part, that drug profile evidence "is not to be used to determine whether the defendant committed the crime charged in this case." "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defendant contends that a jury instruction on drug-profile evidence was necessary because Bilbey's "testimony strayed seamlessly between describing the man who he claimed was [defendant] and drug dealers generally[.]" Defendant failed to identify any specific testimony from Bilbey that warranted a drug-profile evidence jury instruction, and we will not attempt to discern the supposed testimony to which he refers. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Defendant provided only one specific example of drug-profile evidence, which was Skomski's testimony that the Yukon employed counter-surveillance techniques.

As discussed, Skomski's testimony regarding counter-surveillance driving constituted opinion testimony, although we conclude that the failure to qualify Skomski as an expert was harmless. Nonetheless, we further agree with defendant that Skomski's testimony compared the Yukon's driving patterns to drug-profile evidence "in such a way that guilt is necessarily implied." Therefore, defense counsel could have requested the jury instruction for drug-profile evidence be read to the jury. Nonetheless, as also previously discussed, the prosecution presented ample evidence for the jury to find defendant guilty of the charged offenses, and it is unlikely that reading this jury instruction would have affected the outcome of the trial. Thus, defendant has failed to establish that, but for defense counsel's failure to request the jury instruction for drug-profile evidence, the outcome of the trial would have been different.

## G. FAILURE TO OBJECT TO PROSECUTOR'S CLOSING ARGUMENT

Defendant argues that defense counsel provided ineffective assistance by failing to object to portions of the prosecutor's closing argument. We disagree.

"A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Defendant first argues that the prosecutor improperly provided his own opinion that it was defendant's voice on the phone calls with Bilbey. During the prosecution's closing argument, the prosecutor argued the following:

And I played calls and you heard multiple calls of the defendant talking and saying where to meet. And hey, I'll call you back 15 minutes. I'll call you back 10 minutes. And those were calls from February 25th and February 26th.

> One of the things I want to really point out to you is defense attorney and I stipulated that this last recorded call that I played as People's Exhibit Number 4, we stipulated that that was the defendant's voice on that call.
>
> When you listen to that voice on that call and you listen to the voices that's [sic] on all the rest of the calls, the way he talks, the type of words he uses, the dialect, the word slurring, the pauses, it's the same person. It's the same person.

We conclude that the prosecutor merely drew a reasonable inference from the evidence and made an argument based on refuting defendant's theory that this was a case of misidentification. Moreover, Bilbey testified that, when he met defendant in person, he recognized defendant's voice from his previous phone calls with him. Bilbey also testified that the voice on the stipulated phone call was the same voice he had previously heard. The prosecutor's argument was proper, so an objection from defense counsel would have been futile.

Defendant also argues that defense counsel provided ineffective assistance by failing to object to the prosecutor's mischaracterization of the facts during closing argument. The following is the prosecutor's summary of what defendant could be heard saying on the phone call with Foster:

> And he says, man I knew it. I knew I didn't trust him. I walked out of that store and told my wife I didn't trust him. The defendant here walked out of the Dollar store and got in the car with, who? A female. Detective Bilbey, I asked him on direct or redirect examination, you know what female drives this black Yukon? Yeah, it's Tyra [sic] Foster. You know who Tyra Foster is to the defendant? Yeah, it's his significant other.

The prosecutor did not specifically state that he believed defendant to be referring to his interaction with Bilbey in his phone call with Foster. However, that conclusion can be inferred from his statement. We have reviewed the recording, and although the quality of the audio leaves much to be desired, the following exchange occurred:

> [*Defendant*]: Oh, I am so mad at myself. God damn. I'm going crazy around here because I was stupid.
>
> [*Foster*]: Fatty says you better tell. Shit.
>
> [*Defendant*]: What?
>
> [*Foster*]: [unintelligible]
>
> [*Defendant*]: I can't believe I did that. That was stupid, man. I looked that motherfucker in the face and I knew it. I came out and told my wife that motherfucker I think I don't trust him.
>
> [*Foster*]: He wants you to call him too. He says he's about to put some money on his phone. You got something to write his number down?
>
> [*Defendant*]: No. Just give it to me.

Therefore, although defendant did not specifically state that he was referring to Bilbey, the prosecutor clearly provided a faithful paraphrase of what defendant actually said. Furthermore, under the circumstances, it was reasonable to infer that defendant was referring to his transactions with Bilbey.

Because the prosecutor is free to make reasonable inferences on the basis of the evidence in the record, an objection by defense counsel would have been futile. In addition, defense counsel argued to the jury that the evidence did not support the prosecution's argument. Finally, the trial court instructed the jury that it must only consider the evidence admitted, and "[t]he lawyers' statements and arguments are not evidence." "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *Mahone*, 294 Mich App at 212. Defendant has failed to establish that defense counsel provided ineffective assistance for failing to object to the prosecutor's statements during closing argument.

## H. FAILURE TO INVESTIGATE AND CALL FOSTER AS A WITNESS

Defendant argues that defense counsel provided ineffective assistance of counsel by failing to investigate Foster's account of the events and by failing to call her as a witness. We disagree.

Although defense counsel's failure to undertake a reasonable investigation may constitute ineffective assistance of counsel, *Trakhtenberg*, 493 Mich at 51-55, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight," *Dixon*, 263 Mich App at 398 (citations and quotation marks omitted).

Defendant has provided us with an affidavit from Foster in which she stated that, although she did not remember what she or defendant were doing on specific nights in February 2019, she never took defendant to sell drugs, defendant was not selling drugs, she neither conducted countersurveillance techniques nor knew how to conduct such techniques, and she was interrogated by the police and told them that defendant did not sell drugs. Foster also stated that defense counsel never contacted her, but if she had been contacted, she would have told defense counsel that she was willing to testify to the above information. Although Foster's affidavit is not part of the lower court record, we may consider it for the purpose of determining whether it would be appropriate to remand for an evidentiary hearing. *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013).

Because Foster was implicated as being involved in the charged offenses, trial counsel presumably knew about her. Therefore, the fact that counsel did not call her as a witness was likely a decision rather than an oversight. We conclude that such a decision was sound trial strategy. The evidence tends to suggest that Foster was actively involved as a driver for at least one of the drug transactions, and the phone call between defendant and Foster suggests that she was aware that defendant was selling methamphetamine. Trial counsel could reasonably have concluded that the jury would have regarded her credibility with some skepticism. Even worse, calling Foster as a witness could have opened the door to far more damaging testimonial evidence on cross-examination. Trial counsel would have had to weigh the likelihood that Foster's testimony would undermine the officers' eyewitness testimony against the risk of seriously

undermining the defense. We cannot conclude that counsel's decision was objectively unreasonable.

## VI. INACCURATE INFORMATION IN THE PSIR

Defendant argues that the trial court erred by failing to order the probation department to correct an inaccurate statement in defendant's PSIR, so this Court should remand this case for the PSIR to be corrected. We agree.

"Because the Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR, the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id*. at 690. A defendant is particularly entitled to challenge the accuracy of factual allegations unrelated to his or her crime that "could have consequences in prison and with the parole board." *People v Maben*, 313 Mich App 545, 555; 884 NW2d 314 (2015). "If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the [PSIR] shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009), quoting MCL 771.14(6).

In relevant part, the "agent's description of the offense" in defendant's PSIR notes that when a search was conducted of the place where defendant was living, several firearms and some ammunition were located. Defendant actually reported living at a different location to his parole agent. During the sentencing hearing, defense counsel stated, "I would indicate that when I reviewed the [PSIR], the narrative, they are—there are mentions of the gun in the report. My client was not charged with those and there was information within the [PSIR] that they believed they belonged to another person. I would just note that." In response, the trial court stated, "[y]eah, I would agree with that." Therefore, the trial court appeared to agree that the statement regarding firearms and ammunition should not be included in the PSIR. Because the references could affect decisions made by the Department of Corrections and the Parole Board, the PSIR should reflect the trial court's finding, and the firearms and ammunition references should be stricken. Therefore, we remand this case to the trial court for the ministerial task of correcting the PSIR and transmitting a corrected copy to the department of corrections.

Defendant's convictions are affirmed, but we remand for the ministerial task of correcting defendant's PSIR and transmitting a corrected copy to the Department of Corrections. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Michael J. Riordan
/s/ Colleen A. O'Brien